ACCEPTED
12-14-00220-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
10/2/2015 8:27:19 AM
Pam Estes
CLERK

## DOCKET NUMBER 12-14-00220CV

## IN THE COURT OF APPEALS
## FOR THE TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
## AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
10/2/2015 8:27:19 AM
PAM ESTES
Clerk

### EAST TEXAS MEDICAL CENTER GILMER,

Appellant

VERSUS

### BIRDER PORTER

Appellee

Appealed from the 115TH Judicial District Court of
Upshur County, Texas.

---

## APPELLEE'S SUPPLEMENTAL BRIEF ON APPLICATION OF
## *ROSS V. ST. LUKE'S EPISCOPAL HOSPITAL*

---

Respectfully Submitted by:

THE BERNOUDY LAW FIRM

By: _____
Michael L. Bernoudy, Jr.
Texas Bar No. 24051882
2400 W. Grand Ave.
Marshall, TX 75670
Telephone: (903) 935-4223
Fax: (903) 935-4228
MLBjr@bernoudylawfirm.com
www.bernoudylawfirm.com
ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

Table of Authorities ……………………………………………… 1.

Summary of Argument ……………………………………… 2.

Argument………………………………………………… 3.

Conclusion and Prayer ……………………………………… 5.

Certificates of Service and Compliance ………………………… 6.

# TABLE OF AUTHORITIES

Page

**Statutes**

Texas Civil Practice and Remedies Code Section 74.001(a)(13)  3

**Case law**

*Loaisiga v. Cerda,*
379 S.W.3d 248, 257 (Tex. 2012)  4

*Ross v. St. Luke's Episcopal Hosp.,*
462 S.W.3d 496 (Tex. 2015)  3

## SUMMARY OF ARGUMENT

Under *Ross* for a safety standards-based claim to be a Healthcare Liability Claim there must be a substantive nexus between the safety standards allegedly violated and the provision of healthcare. The Texas Supreme Court found in *Ross* that the cleaning/mopping of floors did not have the necessary nexus to the provision of healthcare. Applying *Ross* the case at bar likewise would not be a Healthcare Liability Claims.

## ARGUMENT

### *APPELLEE'S CLAIMS ARE NOT HEALTHCARE LIABILITY CLAIMS UNDER ROSS*

By order dated August 6, 2015 this Honorable Court ordered the parties to apply *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496 (Tex. 2015) to determine whether this case would be a Healthcare Liability Claims as defined by Section 74.001(a)(13) of the Texas Civil Practice and Remedies Code. As explained hereafter, *Ross* makes it clear that the case at bar is not a Healthcare Liability Claim.

The TMLA defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)

*Ross* involved a slip and fall that occurred while the complaining party was visiting a friend at the hospital. The floors were being cleaned and buffed at the time. The complainant slipped and fell causing injury. The case at bar also involves a complainant who was not a patient and slipped and fell on a wet floor.

In *Ross*, the hospital advanced two positions in support of the lower courts' rulings and its assertion that Ross's claim is an HCLC. First, it addressed slip and fall claims generally, and asserted that any slip and fall event within a hospital is directly related to health care because it necessarily is related to the safety of patients. Second, it focused on Ross's claim specifically and argued that her claim is related to health care because she

3

alleged the hospital breached standards applicable to maintaining a safe environment for patients. The Texas Supreme Court disagreed with both positions.

As to the hospital's first contention, a safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a healthcare facility, the claim is against a healthcare provider, or both. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 257 (Tex. 2012).

As to the second contention, Ross alleged that the hospital failed to exercise reasonable care in making the floor safe. The standard Ross said the hospital breached regarding maintenance of its floor may also be the same standards many businesses generally have for maintaining their floors. The hospital didn't claim, nor did the record show, that the area where Ross fell was a patient care area or an area where patients possibly would be in the course of the hospital's providing health care services to them. Nor did the hospital reference support in the record for the position that the area had to meet particular cleanliness or maintenance standards related to the provision of health care or patient safety. *Ross at503*

The Court concluded that the safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care. And if it were not so, the broad meaning of "safety" would afford defendant health care providers a special procedural advantage in the guise of requiring plaintiffs to file expert reports in their suits regardless of whether their cause of action implicated the provision of medical or healthcare. For a safety standards-based claim to be an HCLC there must

4

be a substantive nexus between the safety standards allegedly violated and the provision of health care. *Ross at 504*

Likewise, in the case at bar there is no substantive nexus between the absence of a "wet floor" sign in the emergency room admittance desk and the providing of healthcare.

## CONCLUSION/PRAYER

The facts in *Ross* are nearly identical to those in this case. This Court should rule as did the *Ross* court. Appellee's claims in this matter have no nexus to the rendering of healthcare services and would not require an expert report as provided for in Tex. Civ. Prac. & Rem.Code Chapter 74. The judgment of the trial court was correct in its entirety and should be AFFIRMED by this Honorable Court.

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was delivered via facsimile at (214) 754-0999 and regular mail to Russell G. Thornton on this 2nd day of October, 2015.

_____
MICHAEL L. BERNOUDY, JR.

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this reply (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 1035.

_____
MICHAEL L. BERNOUDY, JR

6